IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **SHARON BROOKS,** ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **4:20-cv-00432-CLM** |
| ) | |
| **ANDREW SAUL,** ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| **Defendant.** ) | |

### MEMORANDUM OPINION

Sharon Brooks seeks disability and disability insurance benefits from the Social Security Administration ("SSA") based on several impairments. The SSA denied Brooks's application in an opinion written by an Administrative Law Judge ("ALJ"). Brooks argues: (1) Grid 201.04 entitled her to a partially favorable decision with benefits; and, (2) the ALJ erred in finding that she could perform her past work.

As detailed below, the ALJ applied the correct legal standards and substantial evidence supports his decision. So the court will **AFFIRM** the SSA's denial of benefits.

**I.    Statement of the Case**

    **A.    Brooks's Disability, as told to the ALJ**

Brooks was 54 years old at her alleged disability onset date and 58 years old at the time of the ALJ's hearing decision. R. 138, 32–33. Brooks completed three

1

Case 4:20-cv-00432-CLM   Document 14   Filed 04/26/21   Page 2 of 10

years of college and has past relevant work as a receptionist, insurance clerk, and administrative clerk. R. 31–32, 187–88.

At the ALJ hearing, Brooks testified that she has had knee problems for several years and that she had a complete knee replacement of her right knee. R. 947. Brooks then testified that more recently her left knee had been giving her problems and that she suffered from both neck pain and vertigo. R. 948–50.

Brooks lives with her nephew in a one-story house, and she spends most days watching television and talking on the phone with her sisters. R. 941, 959–60. After standing or sitting for long periods, Brooks must prop her legs up and put ice packs on them. R. 955–56. But Brooks gets ready by herself, does her own laundry, helps her nephew around his house, and does her own grocery shopping. R. 958–59.

**B.    Determining Disability**

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |

| | *Determine Residual Functional Capacity* | |
|---|---|---|
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5). As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

### C. Brooks's Application and the ALJ's Decision

The SSA reviews applications for disability benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Brooks applied for disability insurance benefits and a period of disability in January 2017, claiming that she was unable to work because of various ailments, including reconstructive surgery of weight bearing joint, obesity, ischemic heart disease, essential hypertension, glaucoma, asthma, and thyroid cancer. After

3

receiving an initial denial in April 2017, Brooks requested a hearing, which the ALJ conducted in February 2019. The ALJ ultimately issued an opinion denying Brooks's claims in April 2019. R. 24–33.

At Step 1, the ALJ determined that Brooks was not engaged in substantial gainful activity and thus her claims would progress to Step 2. R. 26.

At Step 2, the ALJ determined that Brooks suffered from the following severe impairments: reconstructive surgery of weight bearing joint, obesity, and ischemic heart disease. R. 26–27.

At Step 3, the ALJ found that none of Brooks's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. R. 27–28. Thus, the ALJ next had to determine Brooks's residual functional capacity.

The ALJ determined that Brooks had the residual functional capacity to perform light work with these added limitations:

- Brooks can only occasionally climb ramps or stairs and can never climb ladders, ropes, or scaffolds;

- Brooks can frequently balance and can occasionally stoop, kneel, crouch, or crawl;

- Brooks must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, vibration, dust, odors, fumes, and pulmonary irritants;

- Brooks must avoid all exposure to unprotected heights, unprotected moving mechanical parts, and dangerous machinery; and,

- Brooks must alternate sitting and standing every 20 to 30 minutes throughout the work day to change position for a brief positional change of less than five minutes but without leaving the work station.

R. 28.

At Step 4, the ALJ found that Brooks could perform her past relevant work as a receptionist, insurance clerk, and administrative clerk. R. 31–32. Alternatively, the ALJ went on to Step 5 and determined that Brooks could perform other jobs, such as office helper, Cashier II, and garment folder, that exist in significant numbers in the national economy. R. 32–33. Thus, the ALJ found that Brooks was not disabled under the Social Security Act. R. 33.

Brooks requested an Appeals Council review of the ALJ's decision. R. 1–3. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II. Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x

839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III. Legal Analysis

Brooks makes two arguments for why the ALJ erred in finding her not disabled. First, Brooks argues that Grid rule 201.04 entitled her to a partially favorable decision. Second, Brooks asserts that the ALJ erred in finding that she could perform her past relevant work. The court will address each argument in turn.

### A. Grid rule 201.04 doesn't apply.

Brooks first asserts that Grid rule 201.04 directed the ALJ to find that Brooks became disabled when she turned 55. But as the Commissioner points out, Grid rule 201.04 applies to individuals limited to a full range of sedentary work, not the range of light work that the ALJ found Brooks could perform. *See* 20 CFR Part 404, Subpart P, Appendix 2, Table 1, § 201.04. And the ALJ did not rely on the Grids to deny Brooks's application for benefits because he found at Step 4 of the evaluation process that she could perform her past relevant work. R. 31–32. In her reply brief, Brooks concedes that the finding that she can perform her past relevant work precludes a finding under the Grids. So the court finds that there was no error in the ALJ's failure to apply Grid rule 201.04.

> **B.   Substantial evidence supports the ALJ's finding that Brooks could perform her past relevant work.**

Brooks next argues that the ALJ failed to adequately develop the record as to the physical demands of her past work. ALJs have "a basic duty to develop a full and fair record." *Holder v. Soc. Sec. Admin.*, 771 F. App'x 896, 899 (11th Cir. 2019). And if "there is no evidence of the physical requirements and demands of the claimant's past work and no detailed description of the required duties was solicited or proffered, the ALJ cannot properly determine the nature of the claimant's past work." *Id.* (quotations omitted). For example, the Eleventh Circuit has found the record insufficiently developed when there was "no evidence concerning whether the claimant used equipment, the size and weight of items she was required to use, whether she scrubbed the floors or merely dusted, or whether she was required to move furniture in her past work." *Id.* (cleaned up).

1. <u>Development of the record</u>: The ALJ looked to Brooks's work history report, a vocational expert's testimony at the ALJ hearing, and the Dictionary of Occupational Titles ("DOT") to determine that Brooks had the residual functional capacity to perform her past work as a receptionist, insurance clerk, and administrative clerk. R. 31–32. The work history report asked Brooks to list all jobs she had had in the past 15 years and to describe each job. R. 165–68. The form then instructed Brooks to answer how many total hours in each day her jobs required her to walk; stand; sit; climb; stoop; kneel; crouch; crawl; handle, grab, or grasp big

objects; reach; and write, type, or handle small objects. *Id.* The form also asked Brooks to explain the lifting and carrying requirements of each job and whether the jobs required her to use machines, tools, or equipment; technical knowledge or skills; or to write and complete reports. *Id.*

Brooks answered these questions in detail. For example, she explained that her job as an administrative clerk required her to carry outgoing mail and a package down a flight of stairs. R. 168. She also noted that as a receptionist she sat, wrote, typed, and handled small objects for 8 hours a day. R. 167. And Brooks responded that as an insurance clerk she walked/stood for 1 hour a day and sat for the remaining 7 hours of the day. R. 166.

When asked at the ALJ hearing about the jobs listed in Brooks's work history report, the vocational expert characterized Brooks's work as a receptionist and insurance clerk as semi-skilled, sedentary work. R. 967. She characterized Brooks's work as an administrative clerk as semi-skilled, light work. *Id.* The vocational expert then referred the ALJ to the listings for those jobs in the DOT and testified that a hypothetical person with Brooks's residual functional capacity could perform her past relevant work. R. 967, 968–69.

Brooks's work history report, the vocational expert's testimony, and the DOT's descriptions of Brooks's past work provided "enough evidence . . . for the ALJ to compare [Brooks's] current abilities to the physical demands of her previous

employment." *Holder*, 771 F. App'x at 900. And though Brooks argues otherwise, the ALJ made specific factual findings about the physical and mental demands of her past work. For example, the ALJ found that both the DOT and Brooks's self-report supported a finding that her work as a receptionist and insurance clerk was sedentary work and that her work as an administrative clerk was light work. R. 31–32. The ALJ also found that both the vocational expert's testimony and his own review of the record supported the finding that a person with Brooks's residual functional capacity could perform the physical and mental demands of her past work as actually and generally performed. R. 32. The court thus determines that the ALJ satisfied his duty to develop the record as to the demands of Brooks's past work.

2. <u>Brooks's ability to perform past work</u>: So the court must decide whether substantial evidence supports the ALJ's finding that Brooks could perform her past work. Brooks argues that her testimony at the ALJ hearing and several of her medical records show that the ALJ erred in finding that she could perform her past work. Doc. 13 at 4–12.

But other record evidence suggests that Brooks has a greater capacity than she alleged at the ALJ hearing. As the ALJ explained, while the consultative examiner found that Brooks "could have impairments of functions involving standing for long periods, walking long distance, climbing, squatting, bending, overhead activities, pushing, and pulling and working at heights," he determined that Brooks "does not

have limitation of functions involving sitting, handling, hearing, or speaking." R. 545. And the state agency physician found that Brooks could perform a narrow range of light work. Plus, several of Brooks's medical records show that her ambulation and gait were normal, she responded well to physical therapy, and her ischemia was under control.

Having reviewed the record, the court determines that a reasonable person could conclude that the evidence supports the ALJ's finding that Brooks could perform her past work as a receptionist, insurance clerk, and administrative clerk. So substantial evidence supports the ALJ's determination that Brooks could perform her past relevant work. *See Crawford*, 363 F.3d at 1158.

### IV. Conclusion

In summary, the court has reviewed the parties' briefs, the ALJ's findings, and the record evidence and finds that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. So the SSA's denial of benefits is due to be **AFFIRMED**. The court will enter a separate final order that closes this case.

**DONE** this April 26, 2021.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE